3 So.2d 268

## EICHER–WOODLAND CO., Inc., v. BUFFALO INS. CO. OF NEW YORK.

### No. 35983.

May 26, 1941.

Rehearing Denied June 30, 1941.

Carlos G. Spaht and Fred G. Benton, both of Baton Rouge, for plaintiff and appellant.

Watkins & Eager, of Jackson, Miss., and St. Clair Adams & Son, of New Orleans, La., for defendant and appellee.

ODOM, Justice.

Plaintiff, a Louisiana corporation having its domicile in Baton Rouge, Louisiana, brought this suit to recover $2,220.44, plus interest and penalties, from the Buffalo Insurance Company of New York, on a fire insurance policy issued by that company. The fire policy is dated February 4, 1938, and, according to its terms, covered a stock of lumber and lumber products belonging to the plaintiff, then stacked and situated at plaintiff's lumber yard in Woodville, Mississippi. The policy insured the plaintiff against loss by fire in the sum of $4,000, but the amount of the policy

was subsequently reduced to the amount here sued for. Attached to the policy is a loss payable clause which reads as follows:

"It is agreed that any loss or damage ascertained and proven to be due to the assured under this policy shall be held payable to American National Bank and Trust Company, Mobile, Ala., as interest may appear, subject, however, to all the terms and conditions of this policy."

The lumber covered by the policy was destroyed by fire on June 25, 1938.

The policy was signed and issued for and in the name of the defendant company by the Adams Insurance Agency of Gloster, Mississippi, which insurance agency delivered the policy to the plaintiff and collected the premium. The insurance company admitted the issuance of the policy by and through its authorized agent, and admitted the fire loss. But it denied liability on the ground that the policy was canceled on May 30, 1938, or about 25 days before the fire occurred. Plaintiff's contention is that the policy was not canceled. The sole issue involved in the suit, therefore, is whether the fire policy was canceled prior to the date on which the fire occurred. The trial judge was of the opinion that the policy was canceled, and, based upon that opinion, he rendered judgment rejecting plaintiff's demands, from which judgment plaintiff appealed.

Under the facts disclosed and under the law applicable, the judgment is clearly correct. The policy contains the following stipulation with reference to cancellation:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium."

On May 28, 1938, the plaintiff wrote to the Adams Insurance Agency of Gloster, Mississippi, as follows:

"Please refer to policy dated 2/4/38 #32-008084 Buffalo Ins. Co., covering lumber on yard loss payable to American National Bank & Trust Co., premium $60.-00, and also 5/4/38 # 106398, Candler Insurance Co., same coverage other, and cancel these policies, making cancellation effective Monday May 30th. Kindly acknowledge receipt of these instructions."

The second policy mentioned in this letter is not involved in this lawsuit. This letter was received by the Adams Insurance Agency on May 30, and on that date the insurance agency made a note on its ledger sheet No. 11, showing the account which it carried with the Eicher-Woodland Company, that the policy was canceled as of that date. On the same date it made a similar notation on other documents in its files.

On May 31, 1938, the Adams Insurance Agency wrote the American National Bank & Trust Company, which then held the

policy in pledge according to the provisions of the loss payable clause, stating that it had received a letter from Mr. N. J. Woodland of the Eicher-Woodland Company, which requested cancellation of the policy "as of May 30, 1938", and requesting that the bank "forward this cancelled policy to me, for which I thank you".

On June 2, 1938, the bank wrote the Adams Insurance Agency, acknowledging receipt of its letter of May 31, and, among other things, stating:

"We do not quite understand this action on the part of Mr. Woodland, inasmuch as the cancellation of these two policies would leave us no coverage whatever on the Woodville yard while considerable lumber on this yard is still pledged to us securing obligations of Eicher-Woodland."

While the bank did not state in this letter that it refused to surrender the policy for cancellation, it did state that it was unwilling to do so at that time and asked that the matter of surrendering the policy for cancellation be held in abeyance for the time being and until the matter could be "straightened up" with the Eicher-Woodland Company. The bank's position was that it should not be called upon to surrender the policy for cancellation until the Eicher-Woodland Company, the insured, either paid the amount due it or furnished other security.

Counsel for plaintiff argue that plaintiff's request that the policy be canceled was ineffective (1) because the notice to cancel the policy, served on the Adams Insurance Agency, did not have the effect of canceling the policy for the reason that notice to that agency was not notice to the company, and (2) because the cancellation could not become effective without the consent of the American National Bank, which then held the policy in pledge according to the provisions of the loss payable clause attached to and made a part of the policy.

We find no merit in either contention. In its petition plaintiff alleged in Paragraph 6 that the policy was issued to it "by defendant's agent, J. L. Adams of Gloster, Mississippi, and that immediately upon the fire occurring, petitioner notified the said J. L. Adams, as he was required to do under the terms of the policy".

The policy itself was signed by "Adams. Insurance Agency, J. L. Adams, Agent". On November 14, 1939, plaintiff filed a document styled "Motion and Order for Subpoena Duces Tecum", in which it was alleged that the defendant company and its "agents, J. L. Adams, owner and operator of the Adams Insurance Agency of Gloster, Mississippi, have in their possession the agent's copy and/or daily report, ledgers and correspondence between the two and other books and records pertaining to the" policy of insurance involved in this case, and prayed that an order issue commanding "J. L. Adams, owner and operator of the Adams Insurance Agency of Gloster, Mississippi, agent for defendant company," to produce in open court certain documents and correspondence which plaintiff desired to use in evidence.

J. L. Adams was called as a witness for cross-examination by the plaintiff, counsel

for plaintiff stating, according to the record:

"We are calling Mr. J. L. Adams for cross-examination on the ground he is an agent for the defendant corporations herein."

Counsel for defendant insurance company offered no objection to Mr. Adams' being called as defendant's agent and representative. Counsel for plaintiff asked Mr. Adams whether he was the owner of the Adams Insurance Agency and whether he issued the policy of insurance sued on, and Mr. Adams answered both questions in the affirmative. He stated further that he was authorized to issue the policy and that he did so in regular course of business. His testimony shows that he was not a mere insurance broker, but that he was authorized to issue policies for the defendant company as he did in this case.

■ Plaintiff, having alleged in its petition that the Adams Insurance Agency, owned and operated by J. L. Adams, was the agent of the insurance company, and having procured an order directing said insurance agency to produce in court all the documents and correspondence pertaining to this insurance transaction, and having called Mr. Adams on cross-examination "on the ground he is an agent for the defendant corporations herein", is in no position now to deny that the Adams Insurance Agency had authority to represent the insurance company.

■■ This policy of insurance was issued in the State of Mississippi and cov-

ered property situated in that state, and was therefore a Mississippi contract. Under the law and the jurisprudence of Mississippi, the Adams Insurance Agency was the "alter ego" of the company. What it did the company did. The company was unquestionably bound by the acts of this agent. Section 5196 of the Mississippi Code 1930; Interstate Life & Accident Ins. Co. v. Ruble, 160 Miss. 206, 133 So. 223 (citing a long list of authorities).

In St. Paul Fire & Marine Ins. Co. v. Loving, 163 Miss. 114, 140 So. 727, 728, the Supreme Court of Mississippi, after observing that Section 5196 of the Code of 1930 provided that, if any insurance agent received or delivered a policy of insurance for his principal and examined or inspected the risk or received, collected, and transmitted any premium of insurance, he should be held to be the agent of his principal, said:

"Where an agent of an insurance company inspects a risk, issues and delivers the policy of insurance for his principal and collects the premium due upon the policy, he is the general agent of the company, and his knowledge is the knowledge of his principal. In other words, what he does his principal does." (citing a long list of authorities.)

In the case at bar, the Adams Insurance Agency wrote and delivered the policy, collected the premium of insurance, and transmitted it to the company; and it is not denied that it had authority so to do. It therefore follows that it was the general agent of the insurance company and that notice to it by the insured of the can-

cellation of the policy was notice to the company.

At the time the plaintiff notified the insurance agent to cancel the policy, there was no physical surrender of the policy, but there was an unequivocal notice to cancel it as of May 30, 1938. Counsel for plaintiff argue that, in order to effect a cancellation, it was necessary that the insured surrender the policy, and they say that the weight of authority is to that effect.

Counsel are mistaken. The weight of authority is unquestionably the other way. Where a fire insurance policy provides, as does the one here involved, that the policy "shall be canceled at any time at the request of the insured", all that is necessary to cancel the policy is a request by the insured that it be canceled, and it is not necessary that the policy itself accompany the request. The language of the policy is emphatic. It *shall* be canceled "at the request of the insured". The same clause in the policy further provides that, in case the policy is canceled after the full premium has been actually paid, "the unearned portion shall be returned on surrender of this policy". It is clear that, in order to collect from the insurer the amount of the unearned premium, the insured must surrender the policy. The meaning and effect of this clause in the policy is that an unequivocal request on the part of the insured to cancel the policy operates as a cancellation of it, and thereupon the insurer becomes a debtor to the insured for the unearned portion of the premium. The language of the policy is

clear, and the leading cases hold that, where the policy contains such a provision as to cancellation, a physical surrender of the policy is not necessary in order to effect the clear intent of the parties to the contract.

"If the policy is returned to insurer with the request that it be canceled, or even if an unequivocal request for cancellation is made without surrendering the policy, the policy is ipso facto canceled without any affirmative act on the part of insurer. There need be no acknowledgment of the receipt of such request nor any return or tender of the unearned premium as a condition precedent." 26 C.J., § 173, p. 146.

In the case of Union Marine & General Ins. Co. v. Kuljis, 70 F.2d 231, 233, the Circuit Court of Appeals of the Ninth Circuit quoted with approval the following extract from Parsons & Arbaugh v. Northwestern National Ins. Co., 133 Iowa 532, 110 N.W. 907:

"The request is all that is essential to a cancellation, but the policy must be surrendered to secure the return of the unearned premium. The design of the paragraph was to enable one party to the contract to cancel it without the consent of the other, and, to this end, precisely what was necessary to accomplish this result was prescribed."

The leading case touching this point is Gately-Haire Co. v. Niagara Fire Ins. Co., 221 N.Y. 162, 116 N.E. 1015, 1019, Ann. Cas.1918C, 115. In that case the court pointed out the distinction between the rule as to cancellation by the insured and

cancellation by the insurer. The court quoted with approval the following extract from Skillings v. Royal Ins. Co., 6 Ont.L. Rep. 401:

"The insurance may be terminated by giving written notice to that effect. * * * There is no direction; * * * but a written notice must be given to the company, or its authorized agent, and the giving of that written notice is what constitutes the cancellation."

The court said in the Gately-Haire case:

"The policy is only evidence of the contract, and its termination in no way depends upon the surrender or destruction of such evidence. Hillock v. Traders' Ins. Co., 54 Mich. 531, 20 N.W. 571. The one thing necessary to effect a cancellation is a request, made by the insured and received by the insurer." Citing authorities.

In the case of Camden Fire Ins. Ass'n v. Jennings, Tex.Civ.App., 93 S.W.2d 530, 532, it was held that, under a fire policy providing for its cancellation at any time at the request of the insured, the request by the insured to the agent to cancel the policy, assented to by the agent, operated as a cancellation notwithstanding lack of formal cancellation until after the fire. The court said:

"We are of the opinion that where an insurance policy contains a stipulation for cancellation upon request of insured that such request of itself instantly operates as a legal cancellation of the policy without formal cancellation or defacement of the policy by the insurer."

In the leading cases cited above, the courts cited and reviewed at great length the jurisprudence applicable to this issue.

Mr. Woodland of the plaintiff company testified that he intended to cancel the policy and that he understood all along that it had been canceled. He said that his reason for canceling it was that he was carrying more insurance on the lumber at the Woodville yard than the lumber was worth. The Douglas Public Service Corporation of New Orleans had issued negotiable warehouse receipts for the lumber, and plaintiff had pledged these receipts to certain banks, some of them to the American National Bank & Trust Company of Mobile, as security for loans. On October 29, 1938, plaintiff wrote the Douglas Public Service Corporation that it had canceled the insurance policy here involved and one other policy, each held by the American National Bank & Trust Company of Mobile. The plaintiff said in its letter:

"As stated we canceled these two policies May 30th, at the time that we paid the American National Bank & Trust Co., in full on the Woodville yard, and while the American Bank did not return the policies, they nevertheless were canceled, and we received credit for the unearned premium, effective May 30th."

■ There is no merit in counsel's second contention, which is that the policy could not be canceled without the consent of the American National Bank & Trust Company of Mobile. That company, as we have stated, had physical possession of the policy at the time the insured ordered it

canceled as of date May 30, 1938. The bank had made loans to plaintiff on condition that the insurance policies contain a loss payable clause making the proceeds of the policy in case of loss by fire payable to it as its interest might appear. The loss payable clause, attached to and made a part of the policy, is what is generally referred to as an "open or ordinary loss payable clause". In the case of In re Clover Ridge Planting & Mfg. Co., 178 La. 302, 151 So. 212, 222, we held on rehearing that the effect, and the only effect, of such a loss payable clause was:

"* * * to constitute the mortgagee a conditional appointee of the mortgagor to receive payment of the proceeds in case of loss, or, as said in Cooley's Briefs on Insurance, vol. 3, page 2383, 'an appointee to receive the money in case of loss.' "

In that case the fire insurance policy was written in favor of the planting company with a loss clause attached to the policy and made part of it, making the proceeds in case of loss by fire payable to the Canal Bank & Trust Company, the holder of certain notes secured by first mortgage on the property destroyed by fire. The question there involved was whether the proceeds of the policy should be paid direct to the bank or whether they should be paid to the receiver to be distributed by him among the creditors of the corporation. We held that, since the insurance policy covered property which belonged to the receivership, the proceeds of the policy should be paid to the receiver, because:

"The loss payable clause attached to the policies did not change the contractual relationships between the companies and the property owner * * *. The contract remained one between the insurer and the property owner."

We cited and followed the case of Officer v. American Eagle Fire Ins. Co., 175 La. 581, 143 So. 500, 502, in which case we said:

"The clause in this policy making the proceeds, if any, payable to the mortgagee, as his interest might appear, is what is generally referred to as an ordinary or open mortgage payable clause, under which the assured mortgagor remains the responsible party, or party in interest, to control the insurance and the adjustment of the loss. Under policies containing such a clause, the contract remains one exclusively between the insurer and the property owner."

The ruling in the Clover Ridge and Officer cases is in accord with the jurisprudence which prevails throughout this country, as shown by the numerous authorities cited. In addition to the authorities therein cited, see Couch on Insurance, Volume V, Section 1215.

Since the contract of insurance remained one between the property owner and the insurer, and since under the loss payable clause the American National Bank was but a conditional payee of a part of the proceeds of the policy, the bank could not prevent the insured from canceling the policy. The policy, as we have stated, contained the provision that the insured might cancel the policy at any time, and, according to the loss payable clause

attached thereto, the bank held the policy subject "to all the terms and conditions of this policy".

We concur in the view expressed by the trial judge that under the facts disclosed the policy of insurance here involved was canceled as of May 30, 1938, some 25 days before the fire loss occurred.

For the reasons assigned, the judgment appealed from is affirmed, plaintiff to pay all costs.