86 So.2d 683

Charles S. CARLISLE

v.

**AMERICAN AUTOMOBILE INSURANCE COMPANY et al.**

No. 39446.

Feb. 20, 1956.

Rehearing Denied March 26, 1956.

Henican, James & Cleveland, C. Ellis Henican, New Orleans, for plaintiff-appellant.

Gordon Boswell, Robert G. Hughes, New Orleans, for defendants-appellees.

SIMON, Justice.

Plaintiff-appellant instituted this suit against his insurer, American Automobile Insurance Company of St. Louis, for loss and damages by fire to various trucks, automobiles and other equipment owned by him and covered by policy No. 5334848 issued by the defendant on June 14, 1943 for the term from May 29, 1943 to May 29, 1944. Plaintiff also demanded statutory penalty in a sum equal to 12% of his claim and reasonable attorney fees.

To said insurance policy there was attached an endorsement which provided an ordinary "Loss Payable Clause" in favor of the Louisiana Savings Bank & Trust Company. (At the time of the fire plaintiff had a loan with said bank secured by a chattel mortgage on the trucks and automobiles destroyed or damaged in the fire.) For this reason plaintiff also named the bank a defendant in the suit but prays for the reservation to the bank of its full rights to the extent of its interest as may be established herein.

The insurer denied liability on the theory that the policy in question was not in force at the time of the loss by fire which occurred on October 22, 1943, the policy having been cancelled on October 8, 1943 for non-payment of premiums.

After trial on the merits the lower court dismissed plaintiff's suit, and plaintiff has appealed.

The record discloses that the firm of Meyer, Whitty & Hodge was the agent for the insurer who handled the insurance policy in question between plaintiff and the insurer. Plaintiff had not paid the premiums on said policy, but payments thereof had been made by the insurance agent who extended the necessary credit to plaintiff and maintained an open account against him for payment of the premiums so advanced. Plaintiff made no payment on his account with the insurance agent until on October 22, 1943, several hours after the fire and loss herein claimed, he made a payment in the sum of $700.

The payment or nonpayment of premiums did not affect in any way the right of the

company or the insured to cancel said policy. The policy contained a cancellation clause under which either the company or the insured could cancel without any cause whatsoever. The policy provision is as follows:

"This policy may be canceled by the named insured by mailing to the Company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the Company by mailing to the named insured at the address shown in this policy written notice stating when not less than 5 days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing."

Under this provision, on October 2, 1943, the insurer sent a notice of cancellation to plaintiff addressed to him at the address shown in the policy, making October 8, 1953 the effective date of cancellation. A copy of the said notice was also forwarded to the bank as payee in the loss-payable clause and as holder of the policy.

Plaintiff contends that he never received this notice. However, the record contains evidence to the contrary, and we are satisfied that the notice of cancellation issued in accord with the method of cancellation set forth in the policy.

In spite of the fact that the insurance agent had requested the cancellation of the policy because plaintiff had not paid any sum on their open account with him, and with knowledge that said cancellation had been made, the insurance agent wrote a letter dated October 9, 1943 to the bank, as follows:

"Re: Charles S. Carlisle.

"This is to confirm telephone conversation had with you this morning and to advise that we are continuing the coverage under American Automobile Policy No. 5334848 to protect your interest until such time as this matter is straightened out between Mr. Carlisle and our office."

On the basis of this letter plaintiff contends that the insurance coverage under this policy was continued in his favor and was in full force and effect at the time of the fire on October 22, 1943.

Defendant, on the other hand, contends that the policy of insurance, having been properly and legally cancelled by the insurer, could not be restored to full force and effect by an agreement by the insurance agent to protect the interest of the bank as the payee named in the loss payable clause.

The loss payable clause simply designates a particular individual who is to receive all or a certain part of the proceeds to which the insured may be entitled. This designation in no way affects the contractual relationship between the insured and the insurer.

In the case of Officer v. American Eagle Fire Ins. Co., 175 La. 581, 143 So. 500, 502, in determining the rights of the payee named in a similar loss-payable clause of an insurance policy, we said:

"The clause in this policy making the proceeds, if any, payable to the mortgagee, as his interest might appear, is what is generally referred to as an ordinary or open mortgage payable clause, under which the assured mortgagor remains the responsible party, or party in interest, to control the insurance and the adjustment of the loss. Under policies containing such a clause, the contract remains one exclusively between the insurer and the property owner. The mortgagee is only a conditional appointee of the mortgagor to receive part of the proceeds in case of loss. As such conditional appointee, the mortgagee was entitled to receive so much of any sum that might become due under the policy as did not exceed his interest as mortgagee, and no more."

Plaintiff contends that on the basis of the principle that the contract of insurance remains one exclusively between the insurer and the insured and by virtue of the letter dated October 9, 1943, stating that the insurance agent was "continuing the coverage under American Automobile Policy No. 5334848", the only coverage which could be continued was the coverage originally established by the policy in favor of plaintiff. On the other hand, the author of the letter, the insurance agent, explains that the coverage was only for the benefit of the bank and that the words "coverage under American Automobile Policy No. 5334848" were employed to prevent the repetition of all coverage under the policy which would have necessitated a description of all of the vehicles insured thereon. He further testified that after the cancellation of the policy he was authorized to continue the coverage but not the policy.

An unbiased examination of the letter written by the insurance agent on October 9, 1943 clearly shows its subject matter to be the American Automobile Insurance Policy No. 5334848, and the coverage, the insurance, the risk carried thereunder by the insurer was continued and in full force and effect on the date of the loss suffered by plaintiff.

The agent admits that he was authorized to issue the policy, and that he requested the cancellation thereof for nonpayment of premiums. The insurer was not concerned with payment or nonpayment of policies and obviously issued a notice of cancellation to accommodate the insurance agent. It follows that the insurance agent having the authority to request and demand a cancellation also has the authority to recall and nullify this cancellation. He could also issue a new policy on the same terms and conditions as the old one or issue an extension thereon.

This is doubtless a hard case, but we are constrained to hold that the insurer

was bound by the terms of its policy and the letter of October 9, 1943 which operated as an extension or reinstatement of the policy No. 5334848, and we find no ground upon which we can base a conclusion favorable to the insurer which would relieve it from the binding effect of the clear and unambiguous continuation of the coverage provided in said policy.

Plaintiff sets forth in his petition a detailed statement of the damages and losses sustained by him as the result of the fire on October 22, 1943. During the course of the trial, with the acquiescence of counsel, the lower court appointed experts to investigate and report the said loss and damage. Accordingly, the experts made their inspection on or about May 21, 1944.

It seems that after the report of the experts was filed, the case was reset for trial on October 9, 1945, and appellant offered further proof of his loss. There is some discrepancy between the proof offered by the appellant and the report submitted by the experts. This is explained as the result of the examination by the experts having been made approximately 7 months after the fire, at a time when some items had been repaired and some items had been completely destroyed, and, therefore, no evidence of damage could be seen.

■ At the close of the hearing counsel for defendant requested additional time to produce a number of witnesses to contradict plaintiff's testimony as to the nature and extent of his loss. However, defendant never availed himself of this opportunity; and the testimony of plaintiff as to the extent and nature of the loss suffered by him stands uncontradicted. We are, therefore, constrained to hold that the plaintiff has established his claim by a clear and convincing preponderance of evidence, and he should be permitted to recover damages for the losses alleged by him in the total sum of $4,320.90, plus interest from date of judicial demand, there being no definite date shown when proof of loss was established prior to institution of suit.

The remaining issue to be determined is whether under the facts plaintiff is entitled to statutory penalties and to attorney's fees.

LSA–R.S. 22:658 provides that where the failure of the insurer to make payment under its policy within 60 days after receipt of proof of loss is found to be arbitrary, capricious or without proper cause, the insured is entitled to receive 12% damages on the total amount of the loss, payable to the insured, together with all reasonable attorney's fees for the prosecution and collection of such loss.

■ The evidence as a whole convinces us that the defendant was in good faith in its belief that the policy under which this suit was brought was effectively cancelled and not reinstated insofar as it covered the interest of the insured and that it did not arbitrarily refuse or disclaim any monetary liability for loss claimed under the terms of the policy.

For the reasons assigned, the judgment of the trial court is reversed and set aside, and there is now judgment in favor of plaintiff-appellee in the full sum of $4,320.90, with interest from date of judicial demand until paid; all costs to be paid by defendant.

MOISE, J., recused.