MID-CENTURY INSURANCE COMPANY, Plaintiff and Respondent,

v.

Leo NORGAARD and Kenneth Norgaard, Defendants and Appellants,

and

Dennis Leuders and Chad Leuders, Defendants.

No. 12293.

Supreme Court of South Dakota.

Jan. 5, 1979.

---

H. L. Fuller, of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and respondent.

Gary J. Pashby, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendants and appellants.

Carleton R. Hoy, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants.

WOLLMAN, Chief Justice.

In this declaratory judgment action, Mid-Century Insurance Company (Company) sought a determination that the Company was under no duty to provide coverage for the Norgaards' liability arising out of an accident that occurred on July 27, 1976. The trial court found that the policy of insurance issued to appellant Norgaard had expired by its terms on July 26, 1976, and had been effectively cancelled April 17, 1976, for nonpayment of premium, and that hence the Company was under no duty to defend nor was it liable on the policy. We affirm.

Appellant Ken Norgaard is the teenage son of appellant Leo Norgaard. On July 27, 1976, Ken was involved in an accident that entailed bodily injuries. Ken and his father were sued in federal court for damages from that accident. Respondent Company commenced a defense of this action under a unilateral reservation of rights. During that litigation the Company began this declaratory judgment action. Dennis Leuders and Chad Leuders, a minor, (plaintiffs in the tort action) were also named defendants in this action. Although the Leuders were represented at the trial they took no part in its conduct and do not join this appeal.

Leo Norgaard had purchased insurance policies from respondent covering four different vehicles. The policy in question was issued January 26, 1976, contained an expiration date of July 26, 1976, and carried a premium of $150.30. The Norgaards apparently learned of a discount that was offered by the Company for policyholders having children who receive good grades and are licensed to drive. They therefore tendered $120.30 in payment of the premium less the "good student credit." Upon learning of the existence of a student driver, the Company reclassified the policy and raised the premium to $248.30. The Company then sent a premium notice showing a credit of $57.90 for the good student discount, a credit of $120.30 for the payment that had been made by the insured, and a balance due of $70.10. A second premium due notice was sent followed by a third, which notified the insured that the policy would be cancelled if the balance of the premium was not paid prior to April 17, 1976. A final notice of cancellation was sent by the Company on April 28, 1976. This final notice afforded the insured an opportunity to reinstate the policy by paying the remaining premium within sixty days and also included a refund of $37.08 for unearned premium. The re-

fund check was retained by Mr. Norgaard and was cashed, apparently by his wife.

During April and May of 1976, the Norgaards began experiencing marital difficulties. Mrs. Norgaard left the home on June 13, 1976, and the Norgaards thereafter were divorced. Prior to the divorce, Mrs. Norgaard had handled the family finances under the direction of Mr. Norgaard. Mr. Norgaard believed that his wife had paid the premium due. Following his wife's departure, Mr. Norgaard was unable to find the insurance policies he held, and on July 9, 1976, he called his insurance agent to inquire about the policy on the 1973 Chevrolet Camero. According to Mr. Norgaard, the agent replied that "it would be covered until sometime in August." On August 3, 1976, Mr. Norgaard once again called the insurance agent to report the accident in which his son had been involved. Before reporting the accident, he asked the agent, "which cars we had covered . . . He named off my '75 Chevrolet pickup, '73 Chevrolet Impala, '66 Ford Mustang and the 1973 Camero." Mr. Norgaard then told the agent, "Well, you better be right about that Camero, because it was just in an accident that involved bodily injury."

Two insurance agents were involved with Mr. Norgaard's file. The agent who wrote Mr. Norgaard's policy had been discharged by the Company prior to the conversations noted above. The agent who spoke to Mr. Norgaard by phone was Frederick DeNeui. Mr. Norgaard's account was transferred to agent DeNeui on or about July 1, 1976. Prior to the July call from Mr. Norgaard, agent DeNeui had never reviewed any of the Norgaard files. Mr. DeNeui testified that when Mr. Norgaard called in July concerning the insurance on the 1973 Chevrolet Camero, he pulled all four files on the Norgaard vehicles. The evidence shows that there was an insurance contract on a 1973 Chevrolet with an expiration date of August 13, 1976. The policy on the 1973 Chevrolet Camero bore an expiration date of July 26, 1976.

The agent's testimony at trial concerning the telephone conversations with Mr. Norgaard conflicts with Mr. Norgaard's testimony concerning these conversations and conflicts with his own deposition taken before trial. The trial court found that both on July 9 and on August 3, 1976, the agent told Mr. Norgaard that the policy was in force.

There is essentially one issue in this case, and that is whether an agent's statements will operate to revive a cancelled policy of insurance.

■ If there is a general rule, it is that an agent cannot revive a properly cancelled policy through mere representations that the policy is still in effect. *Pearson v. General Casualty & Surety Co.*, 107 N.J.L. 509, 154 A. 739; *Ingalls v. Commercial Insurance Co. of Newark, N.J.*, 18 Wis.2d 233, 118 N.W.2d 178. See Annot. 3 A.L.R.3d 1135, 1136 § 2.

■ In some of the cases the cancellation is held invalid because of the agent's statutory authority to bind the company or revoke cancellations, coupled with his assurances that coverage exists. See, e. g., *Carlisle v. American Auto Insurance Co.*, 229 La. 717, 86 So.2d 683; *Blakely v. American Employers' Insurance Co.*, 5 Cir., 424 F.2d 728. We are directed to no such authority, in the circumstances here presented, in South Dakota. In *Sjoberg v. State Auto Ins. Ass'n of Des Moines, Iowa*, 78 N.D. 179, 48 N.W.2d 452, the insured paid his premium with a nonsufficient funds check and although notice of cancellation was sent, the insurance company directed the agent to attempt collection of the check. The court held that the attempted collection of the check was inconsistent with an intention to cancel the policy and hence the company was held to have waived its notice of cancellation. No basis for such waiver can be found here. In many of the cases holding cancelled policies valid the crucial issue is whether there was in fact a cancellation. *Riverside Insurance Co. of America v. Parker*, 237 Ark. 594, 375 S.W.2d 225; *Citizen's Ins. Co. of Missouri v. Henderson Elevator Co.*, 123 Ky. 478, 96 S.W. 601. Here there can be no question but that the policy was effectively cancelled prior to the July 9

telephone conversation, for Mr. Norgaard had received notice of cancellation together with the unearned premium, which he retained.[1]

In a case with facts similar to those in the case now before us, the Minnesota Supreme Court held an insurance company liable, partially because the premium had not been returned to the insured. The court said: "[B]oth net premium and commission were retained by [the agent] and never returned to [the insured]. Had the full premium been returned to [the insured] when the alleged cancellation took place, he would undoubtedly have known that his insurance was terminated." *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640, 646. Here, appellant knew beyond doubt that the policy had been cancelled. He could not reasonably believe that mere oral representations by the agent could revive the policy.

Finally, appellant addresses two South Dakota cases: *Farmers Mutual Automobile Ins. Co. v. Bechard*, 80 S.D. 237, 122 N.W.2d 86; and *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777. These cases involved exclusionary clauses under a contract and did not address the question of an insured's right under a cancelled contract.[2]

We hold only that when an insured has received notice of cancellation and a refund of his unearned premium, the cancelled policy may not be revived by representations of coverage on the part of the agent without a clear showing that the agent had express authority by statute or contract to revoke cancellations issued by the insurance company.

The judgment appealed from is affirmed.

DUNN, ZASTROW and MORGAN, JJ., concur.

PORTER, J., deeming himself disqualified, took no part in the decision.

1. Cf. *Grandpre v. Northwestern Nat. Life Ins. Co.*, S.D., 261 N.W.2d 804. *Grandpre* concerns commencement of coverage of life insurance under a conditional receipt of premium and does not address termination of coverage under a previously obtained policy.

2. Neither are we here presented with the question of an insured's rights against an agent. Cf. *Moore v. Kluthe & Lane Ins. Agency*, S.D., 234 N.W.2d 260.