CHEHARDY, Chief Judge.
This appeal addresses the propriety of the grant of summary judgment dismissing the insurance agent, Associated Agencies, Inc. (Associated), and the insurer, American Alliance Insurance Company (American), on their assertion that the insured, Roberson Advertising Services, Inc. (Roberson), cancelled its coverage under the policy prior to the loss. Finding that the defendants-movers have borne their factual and legal burdens of proof under LSA-C.C. P. art. 966, we affirm the district , court’s judgment.
Fires which occurred on February 18, 1981 and February 25, 1981 damaged a building and merchandise owned by Roberson. When insurance coverage under American’s policy was denied, Roberson filed for recovery against Associated, the insurance agent, and its unnamed errors and omissions insurance carrier, alleging wrongful cancellation of the policy. Plaintiff sued American, the insurer, alleging its vicarious liability for the acts of the insurance agent and sought recovery under the policy for property damage, legal interest and attorney’s fees. Both Associated and American responded with general denials; Associated affirmatively alleged that Roberson had cancelled the American policy prior to the fires. American filed an incidental demand against Associated for indemnification, should coverage be found to exist under the policy.
Discovery was conducted for more than six years between the filing of suit and defendants’ dismissal. The record before the trial judge established the following facts. In August 1979 Roberson purchased a three-year special multi-peril policy from American through Associated. The policy provided coverage for fire loss (Section I) and general liability coverage (Section II). Its term extended from August 17, 1979 to August 17, 1982. Roberson entered into a finance agreement with Jefferson Bank and Trust Company by which Roberson borrowed the yearly premium amount from Jefferson, paid the premium, and executed a promissory note cosigned by Associated for repayment by monthly installment. In this fashion Roberson paid yearly premiums to American for the policy years ending August 1979 and August 1980.
On December 19, 1980, Mike Roberson, plaintiff’s vice president, forwarded the multi-peril policy to Larry Peterson, vice president of Associated, in a letter stating:
“This will serve as a letter of notice that effective January 1, 1981, we wish to cancel the policies which I have enclosed. Please find enclosed, Workmen’s Compensation Policy, Auto Policy, and special Multi-Peril Policy.”
Roberson then purchased a replacement policy with identical limits of coverage through Liberty Mutual Insurance Company. The policy became effective on January 1, 1981 and provided plaintiff with property and contents coverage for the February 1981 fires.
Peterson received Mike Roberson’s letter enclosing the multi-peril policy and on January 16, 1981 responded, acknowledging cancellation of the coverages. He stated:
“I received your letter dated Dec. 19, 1980 in which you are requesting the cancellation of your insurance coverages.
* * *
“I wish to point out for the record that your letter referred to above was received in this office on January 15,1981. I am sincerely sorry that you have chosen to effect cancellation of your coverages, especially while in the middle of the policy year. I am confident that you are aware that there will be a short rate penalty applied to each of the policies and will be deducted from any return premium that would otherwise be owed. Since some of these coverages are subject to payroll audit, the cancellation will be taken into consideration after we have received the necessary payroll information. I have suggested to Gary that we file a voluntary payroll audit form which will speed up the cancellation. Gary believes this will be acceptable to you. I will therefore wait to hear [from] either you or him.”
*962 On January 30, 1981, Associated forwarded the policy along with a memorandum cancelling the multi-peril policy as of January 1,1981, to Bart Hartnett at American. Hartnett’s office received the memorandum on February 5, 1981. The fires occurred on February 18, 1981 and February 25, 1981.
The premiums paid for the fire loss coverage were not based on payroll information; therefore, Section I of the policy was not subject to audit. After review of payroll information from August 17, 1980 to December 31,1980 forwarded by Roberson, American completed the audit on March 17, 1981. It credited Associated’s account with $1,891, the return premium on the fire loss coverage, and $1,279, reimbursement on the auditable portion of the policy. In April 1981 Associated issued a credit to Roberson’s account.
As the affidavit of its manager Lawrence Levesque makes clear, Liberty Mutual paid Roberson $396,782.13 in property losses which resulted from the fires.
Associated and American each sought summary judgment dismissal from suit, arguing that Roberson had cancelled the American policy prior to the fires. Plaintiff filed a motion for summary judgment, seeking a declaration of coverage on the basis that Associated had declined to cancel the policy pending the payroll audit and had attempted to collect insurance premiums on the policy after the loss.
The trial court reasoned that Roberson had cancelled American’s multi-peril policy effective January 1, 1981. Therefore the coverage was not in force at the time of the February 1981 fires. It granted the motions in favor of both Associated and American, dismissing them from the action.
The issue presented by Roberson on appeal is whether Peterson’s January 16, 1981 letter annulled, suspended or reinstated Mike Roberson’s attempted cancellation of the American policy such that coverage was in effect during the February 1981 fires.
Although plaintiff’s petition alleges Associated’s wrongful cancellation of the policy and American’s vicarious liability, the relief Roberson claims is coverage under the multi-peril policy. Both the agent and insurer sought summary dismissal arguing cancellation of coverage prior to the loss. The summary judgment addressed and resolved the liability of both defendants and granted them the relief prayed for, dismissal from suit. Its present posture is that of a final, appealable judgment. LSA-C.C. P. arts. 968, 1915(A)(5); compare Strauss v. Rivers, 501 So.2d 876 (La.App. 5 Cir.1987); Smith v. Hanover Ins. Co., 363 So.2d 719 (La.App. 2 Cir.1978).
The mover’s burden on summary judgment is twofold: to prove that no material issue of fact exists and to show that he is legally entitled to judgment. LSA-C.C.P. art. 966. To satisfy the initial requirement mover must meet a strict standard by a showing that excludes any real doubt as to the existence of a genuine issue of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). When the facts, viewed favorably to the opposition, are undisputed, the legal application is appropriate. And when reasonable minds must inevitably conclude that mover is entitled to summary judgment as a matter of law on the facts before the court, summary judgment is warranted. Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La.1981). After strict scrutiny, we agree that both Associated and American provided unequivocal proof that the multi-peril policy was cancelled, before the fires. Rozas v. Guillory, 349 So.2d 453 (La.App. 3 Cir.1977); I.C. Realty, Inc. v. Clifton Conduit Company, Etc., 291 So.2d 422 (La.App. 4 Cir.1974).
LSA-R.S. 22:691 is the basis of our decision. The statute reproduces the provisions and stipulations contained in a standard fire insurance policy made, delivered or issued on property in this State. LSA-R.S. 22:691(F)(2) establishes the mandatory requirement for cancellation of a policy:
“This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. * * *”
*963 Cancellation of a fire insurance policy is therefore effective at the request of the insured. Compare LSA-R.S. 22:637 which requires that the insured notify the insurer and surrender the policy to effect cancellation of an insurance contract.
The Standard Form Fire Policy Endorsement of American’s multi-peril policy duplicates the statute’s mandatory requirement for cancellation:
“This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. * * * ” (Form MP-51)
The meaning and effect of the clause is that on the clear and unequivocal request of the insured, the policy is cancelled.
In Society of Roman Cath. Ch. v. Northwestern M.I. Co., 204 So.2d 116 (La.App. 1 Cir.1967), the First Circuit was called upon to determine whether the insured’s oral request brought about cancellation of coverage under LSA-R.S. 22:691 and a cancellation clause identical to that contained in American’s policy. It affirmed the trial court, finding that coverage was cancelled in June of 1964 when Father Engbers telephoned his agent Mr. Moreau and informed him that the church desired to cancel the policies effective July 1, 1964, notwithstanding that the policies were not returned to the agent until October 1964, 11 days after the hurricane. The court held: “[A]ll that is required is notice on the part of the insured directed to the company and/or agent evidencing a clear and unequivocal desire to cancel said policy.” Id. at 119.
Society relied on Eicher-Woodland Co., Inc. v. Buffalo Ins. Co. of N. Y., 198 La. 38, 3 So.2d 268 (1941), which interpreted a Mississippi fire insurance policy containing a cancellation clause that tracked the language of LSA-R.S. 22:691(F)(2). Therein the Supreme Court reasoned:
“Where a fire insurance policy provides, as does the one here involved, that the policy ‘shall be canceled at any time at the request of the insured’, all that is necessary to cancel the policy is a request by the insured that it be canceled, and it is not necessary that the policy itself accompany the request. The language of the policy is emphatic. It shall be canceled ‘at the request of the insured’. * * * ” Id., 3 So.2d at 271.
The court held that the insured’s written request to his agent was an unequivocal notice to cancel the policy as of May 30, 1958 — 25 days before the loss.
The parties agree that Roberson not only notified his agent Peterson to cancel the multi-peril policy effective January 1, 1981, but also surrendered the policy. Plaintiff’s conduct conforms to both the statutory and policy provisions governing cancellation of a fire policy and of the general liability coverages. See generally Gar Real Estate and Ins. Agency v. Mitchell, 380 So.2d 108 (La.App. 1 Cir.1979); compare Forston v. Williams, 518 So.2d 14 (La.App. 4 Cir.1987). The American policy at Form MP-4(3) allows for either notice or surrender to effect cancellation. While the unequivocal notice alone would have been legally sufficient to effect cancellation under the statute, notice and surrender lead to the inevitable conclusion that the multi-peril policy was cancelled on January 1, 1981. As a result no coverage existed under American’s policy during the February 1981 fire loss. American was properly dismissed from the suit. Chauvin v. Highlands Ins. Co., 361 So.2d 1255 (La.App. 1 Cir.1978).
We affirm as well the summary dismissal of Associated. The finding that cancellation of coverage was proper as a matter of law resolved plaintiff’s tort claim of “wrongful” cancellation, in Associated’s favor. Roberson alternatively claimed that Peterson’s January 16, 1981 letter suspended or annulled cancellation of the policy. As a matter of both fact and law the claim must fail.
The mailing, receipt and text of the letter are not disputed; no triable issue exists. Associated, the mover for judgment, introduced the deposition of Larry Peterson who stated that the letter was not an indication of continued insurance coverage. His use of the word “cancellation” referred *964 to adjustment of return premium changes. He further testified that after sending the letter he had several conversations with Mike Roberson, who fully understood that the coverage was cancelled. Associated’s supporting documents proved that Peterson’s letter had no factual effect on the policy cancellation. The burden then shifted to Roberson to show that material facts were still at issue. Plaintiff did not meet the burden. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
Opposing defendants’ motions, plaintiff introduced the 1985 deposition of Mike Roberson, who therein stated that his intention and desire by returning the policy to Peterson was to cancel coverage effective January 1, 1981. There is no fact at issue which is either essential to plaintiff’s cause of action or determinative of the outcome of the dispute. As a matter of fact, the letter did not negate plaintiff’s cancellation of coverage.
Carlisle v. American Automobile Insurance Company, 229 La. 717, 86 So.2d 683 (1956), is distinguishable. Therein the agent Meyer, Whitty & Hodge requested cancellation of an insurance policy for the plaintiff insured’s nonpayment of premiums. After the insurer sent notice of cancellation, the agent, on October 9, 1943, wrote to the policy’s loss payee, the bank to whom Carlisle had mortgaged the insured property, advising: “ ‘[W]e are continuing the coverage under American Automobile Policy No. 5334848 to protect your interest until such time as this matter is straightened out between Mr. Carlisle and our office.’ ” Id. 86 So.2d at 685. When a late October fire destroyed the insured equipment, plaintiff sought recovery from the insurer and agent on the basis of the letter.
On the coverage issue, both the trial and appellate courts found in the defendants’ favor. The Supreme Court reversed. It found that the agent who had the authority to demand cancellation of a policy had the authority to recall and nullify the cancellation. It held the insurer bound by the terms of its policy and the October 9, 1943 letter which operated as an extension or reinstatement of the policy and continued coverage through the date of the fire loss.
Associated was not “under authority” to cancel the American policy either for nonpayment of premiums or otherwise. Roberson cancelled the policy effective January 1, 1981. Peterson’s subsequent response could not and did not repudiate cancellation. Legally, Associated was entitled to summary judgment.
Roberson contends on appeal that defendants’ delay in returning the policy premium payments, coupled with notices requesting premium payment which were sent to plaintiff, suspended the cancellation of the policy. The trial court did not agree and its conclusion is correct. While prompt reimbursement of unearned premiums is required by statute and case law, it is not a condition precedent to policy cancellation, F & H Catering Service v. United States Fid. & Guar. Co., 249 La. 667, 190 So.2d 91 (1966). Cancellation pending reimbursement creates nothing more than a debtor-creditor relationship between the insurer and the insured.
Because the district court correctly found that the policy was cancelled prior to the loss, it effectively denied plaintiff’s claim against Associated and its vicarious liability against American. While agency statute is a question of fact, it is not material to the disposition of the matter at hand. The potential vicarious liability of American is a question of law. Ocmond v. Eserman, 259 So.2d 600 (La.App. 4 Cir.1972). Legally no claim exists.
The trial court judgment dismissed the principal demand against both the agent, Associated Agencies, Inc., and the insurer, American Alliance Insurance Company. By implication it dismissed American’s claim for indemnification and denied plaintiff Roberson’s motion for summary judgment.
We affirm the trial court judgment; the costs are to be borne by Roberson Advertising Services, Inc.
JUDGMENT AFFIRMED.