[Civ. No. 6447. First Appellate District, Division One.—December 15, 1928.]

E. FIRPO, Appellant, v. BYRON JOSEPH SLYTER, Respondent.

Raymond Perry for Appellant.

Russell W. Cantrell for Respondent.

PARKER, J., *pro tem.*—The action is upon an assigned claim of one Frank De Patta against defendant Slyter. The complaint is on the common count for money laid out and expended by said De Patta for the use and benefit of defendant. Issue was joined by a specific denial. Judgment went for defendant and plaintiff appeals. In determining the questions presented it becomes necessary to recite in a general way the facts involved in the controversy. De Patta was engaged in the business of soliciting life insurance. In the course of this work he approached the defendant Slyter and interested him to the extent of a consideration of the advisability of making certain changes in his insurance. Discussion was had concerning the policies being carried by Slyter, but apparently the matter went no further. Some time thereafter a physician called at the home of the defendant and stated that he had been sent by De Patta to make a physical examination of defendant. The testimony of the defendant is that he told the doctor that he had ordered no policy and the doctor then assured him no obligation was being incurred and that the examination was merely preliminary so that it might be ascertained what company might accept defendant as a risk before Mr. De Patta would go to the trouble of submitting an application. The examination was had and the defendant signed a medical report attesting as true the answers given by him in answer to the interrogatories listed in the form. This examination took place on November 20, 1925. There was nothing further done concerning the matter. Appellant contends that at the time defendant signed the medical report he signed an application for insurance specifying the character of policy applied for and the amount desired, namely, $25,000. Evidence was offered by appellant supporting the contention. The evidence consisted of a written application for insurance in the amount named, at the bottom of which was, in writing, the name of defendant. Defendant denied that he had signed any such application and characterized the signature as fake. A handwriting expert was called who

gave his opinion that the signature was genuine. Examples of defendant's genuine signature were received in evidence and compared with the disputed signature. ■ From all of the evidence the finding of the trial court is that no application for such or any insurance was ever signed by the defendant. Appellant urges this court to make an independent comparison of the exemplars and the disputed signature and after such comparison make our own determination, regardless of the trial court's finding. This we decline to do. No reason appears to relax the well-established rule which precludes our inquiry into the domain of disputed fact. The insistent denial of the defendant was sufficient to support the finding of the lower court, particularly when coupled with the showing that the application contained statements contrary to the truth concerning defendant and his financial ability and his age. Further, defendant testified that the amount of premium was prohibitive. Without at all discrediting the testimony of experts, handwriting or others, we conclude for the instant case that the testimony of the expert did not conclude the inquiry or render any finding opposed to such testimony unsupported. ■ Continuing the facts, on or about July 31, 1926, the agent De Patta offered to defendant a policy of life insurance covering the latter. This policy was in an amount of $25,000 and showed payment of $994.55 covering premium for one year from the date thereof, which was December 10, 1925. It will be observed that the delivery or offer on the policy was at a time almost eight months after its date. Defendant refused the proffered policy and De Patta left it on the desk in defendant's place of business in the absence of defendant. The same day defendant sent the policy to his attorney and the latter, on August 19th, returned the policy to the issuing company with the statement that Slyter had never applied for any insurance and refused to accept the policy and that Slyter denied any liability thereunder. In September, 1926, the insurance company returned the policy to the attorney, advising him that the company would accept De Patta's statement of facts in the matter and that as De Patta had paid the full amount of the premium to December 10, 1926, the policy was in full force and would not be canceled. The attorney for Slyter then retained the policy up to the date of trial, in April, 1927. Appellant argues that this state of the record shows a ratification by defendant and accept-

ance of benefits under the policy to an extent which render of no avail the attempted evidence of liability for premium paid. He argues that defendant, after notice of policy and payment of premium by De Patta and of the further fact that the policy was continued in force, nevertheless retained the policy and could have, in the event of death, through his beneficiaries, obtained the full benefit of the insurance. Supporting his contention, appellant cites many authorities both local and from other jurisdictions. It appears, however, that the authorities cited, without consideration or analysis by us here, do not apply to the facts before us. It is conceded that if an insurance agent without the knowledge or consent of his client obtain a policy of insurance concerning the latter, that alone gives no right to the agent to claim reimbursement for any outlay made. Therefore, the whole question here rests upon the conduct of defendant after issuance of the policy. The fact that the policy was not delivered until some eight months from issuance is a strong circumstance here. When it was finally tendered defendant he refused acceptance. The policy was then left in the office of defendant without his knowledge. He then notified the company of his nonacceptance and returned the policy. To this point he did everything possible to promptly disaffirm the policy and to refuse benefits thereunder. The company refusing the returned policy, held the insurance to be in full force and this closed the matter. We do not think that by his failure to act further defendant ratified the act of De Patta in securing the policy. What defendant could have done after the return of the policy is problematical. Possibly he should have returned the policy to the agent De Patta, but in view of the fact that the premium was alleged to have been paid and the policy in effect, he had the right to conclude this to be a useless act. We decline to concede that if the same state of facts as appears here was presented in behalf of the insurance company in resisting the claims of beneficiaries under the policy the amount of the policy could be recovered. However, this question is not before us. We mention it only by reason of the fact that appellant seems to take for granted the right of the beneficiaries to recover should the insured have died before the end of the first year. From the facts here the trial court was justified in its conclusion that there was an attempt to force upon defendant an insurance policy against his wish and without

his authority, express or implied.     It is not necessary to a valid cancellation of a policy that it be physically delivered and surrendered to the insurer. (*Stevenson* v. *Sun Ins. Co.*, 17 Cal. App. 288 [119 Pac. 529].) The cited case differs much from the case at bar, but holds that where there is an actually outstanding enforcible policy an agreement of cancellation may be effected without delivering up the policy. The effect of this holding obviously supporting the conclusion that where no authority exists for issuing the policy and the insured upon a forced or fraudulent delivery having promptly expressed his refusal to accept, then his failure to act further upon the return of the policy to him, against his express objection, does not bind him to payment of premium. And this is particularly true here, where the policy is not offered until near the end of the term covered. Incidentally, it may be noted that while the record discloses evidence sufficient to sustain a finding that the agent De Patta did actually advance the premium, yet the evidence, while not characterized as inherently improbable, is very weak and unsatisfactory. In *La Marche* v. *New York Life Ins. Co.*, 126 Cal. 498 [58 Pac. 1053], plaintiff had received a policy different from the kind he had applied for and when the company declined to return the premium plaintiff instituted suit therefor. In sustaining plaintiff's demand the court makes no mention of the fact that the policy was or was not returned, but does say: "Plaintiff never applied for the policy defendant assumed to issue and of course his beneficiary could have no vested or other interest in a policy which he did not accept or agree to accept." Here the company was not requested by defendant to issue any policy at all. In the case of *Amory* v. *Hamilton*, 17 Mass. 103, the court says: "The cases of ratification are where the agent has gone beyond or beside his authority, for the benefit, as he supposes, of his principal and gives him immediate notice. In such cases, silence is construed acquiescence and ratification. But a delay of intelligence, until an election to approve or disapprove would be attended with no advantage to the principal defeats the right to construe silence into ratification." This case of ancient origin (1821) is still accepted as excellent law and cited in Joyce on Insurance, second edition, section 642.

In the instant case the policy, when delivered, had but a few months to run and approximately two-thirds of the

premium had then been earned and the advantage to the principal was correspondingly reduced. We think that defendant was charged with no duty further than he performed. The appeal is wholly without merit.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.