SARTAIN, Judge.
Plaintiffs, The Society of the Roman Catholic Church of the Diocese of Lafayette and the Congregation of St. Helen’s Roman Catholic Church, instituted this action against defendants Northwestern Mutual Insurance Company, hereinafter called Northwestern, and American Casualty Company, hereinafter called American, on policies issued by said defendants for the sum of $10,997.03, plus statutory penalties and attorneys fees, allegedly due as a result of Hurricane Hilda damage to the Catholic church at Louisa, Louisiana.
At the trial of the case, it was contended that on the date of the loss, October 3, 1964, there were four policies of specific *117 insurance in force, two issued by National Fire Insurance Company, hereinafter called National, and two by Northwestern insuring the church properties at Louisa. In addition to the above policies, the church carried a blanket policy (which was excess) with American. It was stipulated that the total loss incurred by plaintiffs was $25,795.49. Proof of loss, dated .November 20, 1964, prepared by General Adjustment Bureau, Inc. was submitted to each of the aforementioned insurers. The loss was prorated as follows: National, $5,498.51 and $5,498.52, under its two policies; Northwestern, $5,498.52 on each of its two policies, for a total sum of $21,-994.07. The balance of $3,801.42 was assigned to American as excess insurer. Subsequent to receipt of proof of loss, National paid $10,997.03 on its two policies and American paid $3,801.42 on its blanket policy. Northwestern notified plaintiff that there was no coverage under its policies since they had been cancelled effective July 1, 1964. This, of course, left due a sum of $10,997.03 which American refused to pay under its blanket policy. As a result, plaintiffs filed suit against both Northwestern and American in an attempt to recoup the residue of the loss.
Northwestern defended plaintiffs’ suit on the grounds that policies previously issued by it were effectively cancelled on July 1, 1964.
American defended urging that plaintiffs’ policies with Northwestern were not effectively cancelled prior to the loss on October 3, 1964 and that the respective liabilities of the defendants were as shown on the original proof of loss.
The trial judge ruled that Northwestern’s policies were in fact cancelled on July 1, 1964 and that American was liable for the additional sum of $10,997.03, together with statutory penalties in the amount of 121%, together with attorneys fees in the sum of $2,500.00. American appealed suspen-sively urging that the trial judge erred- in holding that Northwestern’s policies were cancelled prior to the loss giving rise to this litigation and in casting American for penalties and attorneys fees. Northwestern urges that plaintiffs neither appealed nor complained by way of answer to the appeal of American and that the judgment of the trial court in favor of Northwestern is final and that this court is without authority to grant plaintiffs any relief against Northwestern.
Plaintiffs in brief and oral argument urge the affirmation of the judgment rendered in the trial court.
For reasons hereinafter stated we are of the opinion that the judgment of the district court in favor of Northwestern and against plaintiffs is correct and should be affirmed. Accordingly, it is not necessary for us to consider the special defenses of Northwestern.
CANCELLATION ISSUE
The facts in this case are essentially undisputed. The documents involved were offered in evidence pursuant to stipulation and only one witness testified, that being Father John Engbers, Pastor of the Congregation of St. Helen’s Church at Louisa.
Father Engbers received a letter from Bishop Schexnayder dated June 24, 1964, informing him that a new insurance program for Bishop Schexnayder’s Diocese had been installed and would become effective on July 1, 1964. The Bishop informed the Pastors in the letter, that, because of the new insurance program instituted through American, all existing policies should be immediately cancelled:
“The importance of having the policies cancelled by July 1, 1964 cannot be overstressed. Any delay will result in additional penalty charges.”
Father Engbers telephoned W. J. Moreau, the agent in Lake Charles of National Fire and Northwestern, and informed him that the Church desired to cancel effective July 1, 1964, the Northwestern policies covering *118 St. Helen’s Church property in Louisa. Father Engbers testified in this regard as follows:
“Q. Now, the Bishop in his letter did tell you that a new policy had been issued and.became effective on July 1st and at the same time instructed you to cancel the different policies as of July 1 ?
A. Yes, sir.
Q. You are subject to the Bishop insofar as authority in the Church?
A. It’s my view that if the Bishop gives me orders, I have to obey, yes.
Q. Now, when you received this letter from the Bishop, did you call to cancel the policy?
A. I called Mr. Moreau around July 1st or it might have been before.
Q. Did you tell him to cancel the two policies of Northwestern and the two National policies?
A. The Bishop had written a letter asking me to cancel.
Q. You told Mr. Moreau he should therefore cancel?
A. Yes, sir.
Q. Did Mr. Moreau raise any objections ?
A. I told Mr. Moreau that I regretted it very much, because he had taken care of my business. He took it as ‘fait accompli’.
Q. Was anything said about the return of the policies?
A. Mr. Moreau seemed to indicate to me that it wasn’t necessary right away.”
Testimony also shows that when Father Engbers received subsequent monthly premium statements, he called Mr. Moreau to object and was told to send in the policies. The policies were not surrendered until October 14, 1964, at which time Mr. Moreau made a notation on the face of each policy stating that the policies were cancelled as of that date.
The policy contains explicit provisions with regard to cancellation:
“Cancellation of Policy. This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.” (Emphasis ours)
The above clause tracks the specific language of LSA-R.S. 22:691(F) which provides for the cancellation of insurance policies in Louisiana.
American advances the argument that the cancellation was not effected on July 1, 1964, because the policies were not surrendered on that date. This contention is refuted by the Supreme Court case of Eicher-Woodland Co., Inc. v. Buffalo Insurance Company of New York, 198 La. 38, 3 So.2d 268 wherein it is stated:
“ * * * Where a fire insurance policy provides, as does the one here involved, that the policy ‘shall be canceled at any time at the request of the insured’, all that is necessary to cancel the policy is a request by the insured that it be canceled, and it is not necessary that the policy itself accompany the request. The language of the policy is emphatic. It shall be canceled ‘at the request of the insured’.”
American contends that the Eicher case is inapposite to the case at bar because in Eicher the cancellation was in writing and immediately noted on the books of the agent.
A review of the Eicher case (decided May 26, 1941, rehearing denied June 30, 1941) does not warrant the conclusion that notice for cancellation must be in writing. The Eicher case dealt exclusively with the interpretation of the cancellation clause in a fire insurance policy issued in Mississippi. It is *119 noted, however, that Section 15.01 of Act 195 of 1948 is the source of our present LSA-R.S. 22:691(F) and the language contained therein is identical to the cancellation clause under consideration in the Eicher case. Said statute requires that the policy provide the following:
* * ‡ ‡
“Cancellation of policy — This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days’ written notice to cancellation with or without tender of the excess paid premium above the pro rata premium for the expired time which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.”

Thus it is clear that to effect a cancellation of an insurance policy of the type under consideration in the instant matter all that is required is notice on the part of the insured directed to the company and/or agent evidencing a clear and unequivocal desire to cancel said policy. The return of the policy itself is a prerequisite only to a refund of the excess of the premium paid.
While the Eicher case is the last expression by our Supreme Court on the question of what acts are necessary to constitute an effective cancellation of the fire insurance policy, the case of Glens Falls Insurance Co. v. Founders’ Insurance Co., 209 Cal.App. 2d 157, 25 Cal.Rptr. 753, 3 A.L.R.3d 1058 deals with a California statute similar to our own LSA-R.S. 22:691(F), from which case we quote:
“The California statutory standard form of fire insurance policy provided for in section 2071 of the Insurance Code contains the following language: ‘This policy shall be canceled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.’ The sole requirement to effect a cancellation by the insured is a definite and unconditional request for cancellation actually communicated to the company. (3 Richards on Insurance (5th Ed.), § 532, pp. 1764, 1765; Boutwell v. Globe & Rutgers Fire Ins. Co., 193 N.Y. 323, 85 N.E. 1087.) While the insured can cancel forthwith at any time by request, the request for cancellation must be unequivocal and absolute. (Richards, supra; Atlantic Fire Ins. Co. of Raleigh, N. C. v. Smith, 183 Okl. 97, 80 P.2d 216; Adler v. Burnes, 288 Mass. 409, 192 N.E. 922, 923; and see American Glove Co. v. Pennsylvania Ins. Co., 15 Cal.App. 77, 80, 113 P. 688.) No formal or written notice of cancellation is required (Richards, supra; American Glove Co. v. Pennsylvania Ins. Co., supra, at p. 80, 113 P. at p. 689); the surrender of the policy is not a prerequisite to cancellation (Richards, supra; Stevenson v. Sun Insurance Office, 17 Cal.App. 280, 288, 119 P. 529; Firpo v. Slyter, 95 Cal. App. 500, 504, 272 P. 1111); nor is the return of the unearned premium a condition precedent to cancellation. (Richards, supra; Mangrum & Otter v. Law U. & R. Ins. Co., 172 Cal. 497, 157 P. 239, L.R.A.1916F, 440.) ”
The evidence in this case clearly reflects that Father Engbers followed the instructions of his superior and did in fact timely notify Mr. Moreau to cancel the policy issued by Northwestern.
PENALTIES AND ATTORNEY FEES
We now turn our attention to the matter of statutory penalties and attorney fees granted by the trial court in favor of plaintiffs and against American. For rea *120 sons hereinafter stated we do not find that under the circumstances of this case American acted in such a capricious and arbitrary manner as to render it liable for penalties and attorney fees. LSA-R.S. 22:658.
While the proofs of loss submitted to Northwestern and National are dated November 20, 1964 the first proof of loss submitted to American in the amount of $3,-801.42 was not received by American until November 25, 1965. Payment of this sum was timely tendered. The record fails to indicate that any later proof of loss for any additional sum was ever submitted to American. As a matter of fact the extent of American’s additional liability as excess insurer hinged upon a determination of whether or not plaintiffs had effectively cancelled its insurance with Northwestern. The initial notice of loss, proofs of loss, and correspondence between plaintiffs and its three insurers clearly indicated to American that Northwestern’s policy was in effect on the date of the loss. The facts substantiating the conclusion that Northwestern’s policy was cancelled on July 1, 1964 were clearly within the knowledge of plaintiffs and Northwestern. It was not until after suit was filed, pretrial discovery and a trial on the merits that it was determined that Northwestern’s policy was cancelled prior to the loss and that American’s additional liability as excess insurer attached. Plaintiffs compounded the doubt by proceeding against both Northwestern and American. Counsel for American very cogently presents the following argument with which we agree:
“The Trial Court erred in holding that simply because American did not prevail in its contentions in the Trial Court, that penalties and attorneys’ fees must necessarily follow. Not so; according to the very terms of the statute failure to pay must be preceded by filing of proofs and demand, and then must be ‘arbitrary, capricious, or without probable cause’. Defendant complied timely with every demand made upon it prior to the filing of suit by plaintiffs, and then after suit was filed, defended by urging precisely the allegations and positions taken by plaintiffs in their suit against Northwestern.”
It is clear that there existed at the time this suit was filed a legitimate conflict between American and Northwester*! as alleged co-insurers and that American cannot be held to have acted so arbitrarily as to subject itself to penalties and attorneys fees.
For the above and foregoing reasons the judgment of the district court is affirmed insofar as the same is in favor of Northwestern Mutual Insurance Company and against the plaintiffs; and, insofar as the same is in favor of the plaintiffs and against American Casualty Company in the amount of $10,997.03, together with legal interest thereon from date of judicial demand until paid. The said judgment insofar as the same decreed plaintiffs were entitled to statutory penalties and attorneys fees is hereby reversed and set aside. Costs in the trial court are assessed against American Casualty Company. The costs of this appeal are assessed against plaintiffs.
Judgment affirmed in part and reversed in part.