J2SHORTESS, Judge.
Paul Pécora purchased a home in Pontcha-toula, Louisiana, from Central Progressive Bank of Amite (CPB).[1] CPB provided financing for the purchase. The home was initially insured by Louisiana Farm Bureau Mutual Insurance Company (plaintiff). On February 24, 1994, plaintiff advised Pécora his policy was being canceled for nonpayment of membership dues. On March 24, 1994, plaintiff wrote to CPB and advised it Pe-cora’s policy had been canceled. That unsigned letter further provided, “In accordance with the Mortgage Clause, we will continue to protect your interest until 12:01 A.M., 04/13/94.” On March 29, 1994, however, John Dorsa, plaintiffs account underwriter, wrote CPB and advised, “The above policy will not be renewed effective June 23, 1994, because of underwriting reasons. In accordance with the Mortgage Clause, we will continue to protect your interest until 12:01 A.M., June 23,1994.” (June 23 was the end of the policy period.) On April 25, 1994, Pecora’s home was damaged by arson.
Stanley M. Dameron, President of CPB, gave a statement under oath in June 1994. He testified CPB’s policy is that when a cancellation notice arrives, the bank secures “forced placed coverage” under a blanket mortgage security policy. This coverage is intended to protect the bank’s interest in the event there is no other insurance. Dameron stated that when the bank receives a cancellation notice, it usually contacts the homeowner. If the bank discovers there is coverage, it retroactively cancels the forced placed coverage.[2]
*799 In this case, CPB placed the Pécora property under its blanket mortgage security policy with Certain Underwriters at Lloyds, London (defendant), when it received the first cancellation notice from plaintiff. When CPB received the second notice stating Farm Bureau would protect CPB’s interests until June 23, CPB did not remove the property from defendant’s policy.
After the house burned, CPB made a claim under plaintiffs policy. Because of what it termed its “confusing communication to the Bank on the cancellation of the policy,” plaintiff paid CPB the balance due on the Pécora loan. CPB assigned to [3plaintiff its rights against defendant, and plaintiff filed this action seeking to recover the sum it paid CPB or, in the alternative, to recover a pro rata share of the loss from defendant.
The parties filed cross motions for summary judgment. The trial court granted defendant’s motion and denied plaintiffs, stating in oral reasons:
On March 24, a letter was sent to the bank indicating the policy would lapse April 13, 1994. That was dated March 24. On March 29, a letter was sent to the bank saying that they will continue to protect the interest of the bank until June 23, 1994. Obviously a mistake was made, but I think the mistake was obviously also Louisiana Farm Bureau’s mistake, and they must suffer for that mistake, not other parties. It’s clear to me that Lloyd’s policy was excess coverage, and it’s also clear that the bank had a right to rely upon ... Farm Bureau’s second letter.
Plaintiff appeals. It contends the trial court erred (1) in finding defendant did not owe a pro rata contribution, (2) in finding defendant’s policy was excess coverage, and (3) in failing to apply Louisiana Revised Statute 22:691, the standard fire policy, to defendant’s policy.[3]
Plaintiff attempts to analogize defendant’s blanket mortgage security policy to a liability policy, citing language in Penton v. Hotho[4] and Federal Insurance Company v. St. Paul Fire and Marine Insurance Company [5] that it is customary for excess policies to include a requirement for underlying primary coverage in a certain amount and to list the primary coverage within the excess policy. This analogy is not apropos, however. Damages caused by tort liability are open-ended, and excess policies are common in that context. Excess liability policies list the underlying coverage to make it clear when that coverage begins. Fire policies are different. The value of immovable property insured under a fire policy is fixed and determined, and a policy normally covers the entire loss. True excess fire policies are thus rare.
UWhile the trial court characterized defendant’s coverage as “excess,” it might be more appropriate to call it “non-contributing.” A blanket mortgage security policy is intended to provide coverage only in the absence of other insurance; the insurer contributes nothing if there is primary coverage. The general provisions of defendant’s policy contain the following statement under “Term”: “If the property afforded insurance by this Policy is also covered by other insurance terminating at noon on the inception date of our coverage, insurance under this Policy shall not become effective until such other insurance has terminated.” (Emphasis added.) Under “Conditions,” the policy states:
THIS INSURANCE IS EXCESS INSURANCE. If there is any other valid and collectible insurance which would attach if the insurance provided under this Policy had not been effected, this insurance shall apply only as excess insurance *800 and in no event as contributing insurance, and then only after all other insurance has been exhausted.
(Bold emphasis added.)
Plaintiffs counsel states in brief that Pen-ton requires an examination of the practical intent of the insurer and insured in forming the contract. Dameron’s undisputed statement clearly shows CPB’s intent was to protect itself if the mortgagor failed to maintain fire coverage, not to provide a benefit to plaintiff in the event of a fire. Furthermore, the language of the policy is clear that defendant did not intend to be bound for a pro rata share of a loss covered by another insurer.[6]
Plaintiff also argues defendant’s policy should be reformed in accordance with the standard fire policy as set forth in Revised Statute 22:691, which contains a pro rata clause. Defendant contends, however, that a blanket mortgage security policy is not a standard fire policy but is sui generis. We agree with defendant. This policy was not issued to a homeowner, but to a bank. It covers only the mortgagee’s financial interest in the property. Over one hundred years ago in Cannon v. Home Insurance Company [7] our supreme court recognized that a fire | spolicy secured by a mortgagee insures a different interest in the property than one secured by the property owner.
Furthermore, much of the language required by 22:691 makes no sense in the context of a blanket mortgage security policy. For example, the statute requires two paragraphs concerning the mortgagee’s interest and obligations, including a requirement that notice be given the mortgagee if the insurer cancels the policy and the mortgagee’s right to provide proof of loss upon the mortgagor’s failure to do so. Defendant’s policy clearly was not a standard fire policy, and defendant was not required to include the provisions of 22:691 in its policy.
For the foregoing reasons, we find no legal error in the trial court’s decision granting summary judgment in favor of defendant, Certain Underwriters at Lloyds, London. We hereby affirm the judgment in favor defendant, at plaintiff’s cost.
AFFIRMED.

. The bank had acquired the property through foreclosure.

. Dameron explained there may be coverage even though the bank receives a cancellation notice if the homeowner switches insurance agents or companies.

.At trial, plaintiff argued its policy had been validly canceled before the fire and thus defendant was responsible for the entire loss. Plaintiff seems to have abandoned this argument on appeal. In light of Carlisle v. American Automobile Insurance Company, 229 La. 717, 86 So.2d 683 (La.1956), which is on all fours with this case, this was a wise move. Carlisle held that one who has the authority to cancel a policy also has authority to reinstate it, and that a letter to a bank agreeing to protect the interest of the bank beyond the cancellation date of the policy had the effect of reinstating the policy as to the bank.

. 601 So.2d 762, 765 n. 3 (La.App. 1st Cir.1992).

. 93-1099 (La.App. 1st Cir. 6/24/94), 638 So.2d 1132, 1135-36.

. We are aware of the case of Farmers-Merchants Bank & Trust Co. v. St. Katherine Insurance Co., 96-1138 (La.App. 3d Cir. 4/30/97), 693 So.2d 876, writ denied, 97-1867 (La. 10/31/97), 703 So.2d 25, finding a similar blanket mortgage security policy to be primary coverage. Plaintiff’s policy in this case contains a pro rata clause rather than an excess clause, and to that extent the cases are distinguishable. To the extent Farmers-Merchants conflicts with the decision herein, we decline to follow it.

. 49 La.Ann. 1367, 22 So. 387 (1897).